USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 06 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MILDRED TAYLOR,
                 Plaintiff,

    -v-

NEW YORK CITY DEPARTMENT OF EDUCATION,
ET AL,
                 Defendants.

------------------------------------------------------------X

11 Civ. 7833 (AJN)

OPINION

ALISON J. NATHAN, District Judge:

      Plaintiff, Mildred Taylor, has filed this action alleging that Defendants violated her First Amendment right to speak as a citizen on matters of public concern, and claiming municipal and supervisory liability against a number of the Defendants. Defendants move to dismiss (D.E. 21, 24), arguing that Taylor cannot state a viable First Amendment claim as a matter of law, and that even if her First Amendment claim is sufficient to survive a motion to dismiss as a general matter, Taylor has not sufficiently alleged liability as to certain Defendants. The Court GRANTS IN PART and DENIES IN PART Defendants' motion.

## I.   BACKGROUND

      The following facts are drawn from Plaintiff's Amended Complaint and, for purposes of this motion, are assumed to be true. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). During the 2009-2010 school year, Taylor was employed by the New York City Department of Education ("DOE") teaching middle school. (Am. Compl. ¶¶ 7, 14). After a dispute between Taylor and the school principal, Brenda Hollomon, regarding the subjects that Taylor was required to teach led to a union grievance that was resolved in Taylor's favor, Taylor

was not required to teach English. (Am. Compl. ¶¶ 11, 14). However, in roughly April or May of 2010, Taylor became aware that her students were being given grades in an English course under her name, even though Taylor had not taught her students any such course. (Am. Compl. ¶ 15). Taylor brought the matter of the allegedly fraudulent grades to the attention of New York City Council Member Annabel Palmer, New York State Senator Ruben Diaz, and the press, and was interviewed on local television news channels. (Am. Compl. ¶¶ 16-17).

Taylor alleges that after contacting these individuals and speaking to the press, the deputy superintendent of the DOE, Nancy Velez, attended a number of her classes and unfairly critiqued her, and that Hollomon "complained bitterly" of the events to a colleague. (Am. Compl. ¶¶ 10, 18-20). On the last day of school, Hollomon informed Taylor that she was being "excessed"—terminated due to budgetary constraints. (Am. Compl. ¶ 22). Taylor claims that this termination was a pretext for retaliation based on her comments to the press, alleging that the school's budget had been fixed before she had spoken to the press and politicians, and that a number of other teachers had been terminated shortly after the budget was established. (Am. Compl. ¶¶ 19, 22). As such, Taylor has raised claims under 42 U.S.C. § 1983, asserting that Defendants deprived her of her rights to speak as a citizen on matters of public concern, and further alleges municipal and supervisory liability. (Am. Comp. ¶¶ 35-39).

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a motion to dismiss, the Court must draw all reasonable inferences in favor of the plaintiff. *Kassner*, 496 F.3d at 237.

2

### III. FIRST AMENDMENT RETALIATION

#### A. Speech "as a Citizen"

A plaintiff alleging unconstitutional retaliation depriving her of her right to free speech must establish that her speech is protected by the First Amendment. *See Weintraub v. Bd. of Educ.*, 593 F.3d 196, 200 (2d Cir. 2010). Under the Supreme Court's decision in *Garcetti v. Ceballos*, to establish that speech is protected under the First Amendment requires, among other things, a showing that the employee "spoke as a citizen on a matter of public concern." 547 U.S. 410, 418 (2006). Here, Defendants argue that, as a matter of law, Plaintiff's speech was not "as a citizen" and, therefore, no First Amendment retaliation claim can be asserted on the above facts. *See Jackler v. Byrne*, 658 F.3d 225, 237 (2d Cir. 2011) ("If the employee did not speak as a citizen, the speech is not protected by the First Amendment . . . .")

#### 1. Principles for determining whether speech is made as an employee or as a citizen

As the Supreme Court has explained, conducting the inquiry into whether speech is made "as a citizen" has sometimes proved difficult because of the enormous variety of fact situations that may arise in such cases. *Garcetti*, 547 U.S. at 418. The inquiry is a "practical one," for which the Supreme Court has not articulated a comprehensive framework to define whether speech is in the course of an employee's duties. *Id.* at 424. Indeed, because the inquiry is fact-bound, courts sometimes defer resolution of this question because the record is not sufficiently developed or disputes of fact exist precluding resolution of this question as a matter of law. *See, e.g., Smith v. New York City Dep't of Educ.*, No. 09-cv-9256, 2011 U.S. Dist. LEXIS 125069, at *20-22 (S.D.N.Y. Oct. 28, 2011) (explaining that "[a]ny reliable conclusion would require evidence of precisely what was said and to whom it was communicated"); *Caraccilo v. Vill. of*

*Seneca Falls*, 582 F. Supp. 2d 390, 407 (W.D.N.Y. 2008); *see also Decotiis v. Whittemore*, 635 F.3d 22, 34-35 (1st Cir. 2011). Nevertheless, the Second Circuit has recognized that the question of "[w]hether the employee spoke solely as an employee and not as a citizen is . . . largely a question of law for the court." *Jackler*, 658 F.3d at 237.

  A number of principles have emerged that guide this Court's inquiry. The Supreme Court has noted that the test it has announced is guided by the overarching objectives at issue in its jurisprudence in this area. *See Garcetti*, 547 U.S. at 418-19. Weighing on the side of more limited First Amendment protection, the Court has noted that "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services," and that the First Amendment does not entitle public employees to "constitutionalize the employee grievance." *Id.* at 418, 420. At the same time, however, "a citizen who works for the government is nonetheless a citizen," and the government's authority to limit citizen speech is necessarily limited by the First Amendment. *Id.* at 419. Moreover, the public has an interest "in receiving the well-informed views of government employees engaging in civic discussion," *id.*, further counseling against overly restrictive limitations on public employees' First Amendment rights.

  With these principles in mind, *Garcetti* articulated a number of factors for courts to consider in resolving this question. For instance, *Garcetti* explained that it is not dispositive that the speech at issue concerned the subject matter of the plaintiffs' employment because the First Amendment protects some expressions related to the speaker's job. *Id.* at 421. However, speech that "owes its existence" to the employee's responsibilities is not speech as a citizen for First Amendment purposes. *Id.* at 421-22. *Garcetti* distinguished, for example, such speech from

public statements outside the course of the employee's duties, including writing a letter to a local newspaper or discussing politics with a co-worker, noting that these activities are "the kind of activity engaged in by citizens who do not work for the government." *Id.* at 423-24. In assessing this key consideration, the Supreme Court emphasized that "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Id.* at 424-25; *see also Weintraub*, 593 F.3d at 203 ("[U]nder the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer.").

Courts considering this question in the wake *Garcetti* have also suggested considerations that help define whether an instance of speech is made pursuant to an employee's duties or as a citizen. In *Weintraub*, the Second Circuit affirmed a district court's determination that a teacher who filed a union grievance and complained to an assistant principal about the assistant principal's failure to discipline a student who was throwing books at him was not engaged in speech as a citizen. *See id.* at 205. In particular, the Court of Appeals concluded that Weintraub's grievance was pursuant to his official duties under *Garcetti* because it was "part-and-parcel of his concerns about his ability to properly execute his duties as a public school teacher—namely to maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning." *Id.* at 203 (quotation marks and internal citation omitted). This conclusion was reinforced by the Court of Appeal's determination that Weintraub's speech took the form of an employee grievance, for which there is no relevant

5

civilian analogue, unlike submitting a letter to a newspaper or discussions of politics with a co-worker. *See id.* at 203-04. Other courts have articulated additional factors, including whether the plaintiff's speech was governed by a rule or policy requiring such speech, *see, e.g., Schoolcraft v. City of New York*, No. 10-cv-6005, 2012 U.S. Dist. LEXIS 82888, at *15-16 (S.D.N.Y. June 13, 2012); *see also Barclay v. Michalsky*, No. 07-cv-3219, 368 Fed. Appx. 266, 268 (2d Cir. 2010), and whether the plaintiff's speech was the result of special knowledge gained in the course of her employment, *see, e.g., Pisano v. Mancone*, No. 08-cv-1045, 2011 U.S. Dist. LEXIS 28864, at *31 (S.D.N.Y. Mar. 18, 2011); *Bearss v. Wilton*, No. 08-cv-248, 2010 U.S. Dist. LEXIS 144492, at *17-18 (D. Vt. Aug. 10, 2010); *Kelly v. Huntington Union Free Sch. Dist.*, No. 09-cv-2101, 2012 U.S. Dist. LEXIS 45725, at *35-36 (E.D.N.Y. Mar. 30, 2012).

### 2. Taylor's speech

In this motion, the Court is confronted with a conflict on how the above factors should be weighed. Specifically, Defendants focus on the content of Taylor's speech, arguing that she was speaking pursuant to her duties because her speech related to the classes she was (or was not) assigned to teach and the grades issued to her students. (Def. Mot. at 6-9). In contrast, Taylor focuses more on the medium of that speech, particularly that it was directed at the press and politicians rather than toward her superiors or through internal channels. (Pls. Opp. at 4-10). The Court's assessment of this question is further complicated by the posture on which this issue arises—a motion on the pleadings—which leaves the Court without detailed information regarding the exact content of Taylor's speech, a precise description of her job duties, or information on any rules or policies governing her employment obligations.

Beginning with Plaintiffs' arguments against dismissal, the Amended Complaint alleges that Taylor's speech was made to the press and local politicians, a factor cutting in favor of

finding that her speech was made as a citizen rather than a public employee. In *Weintraub*, the Second Circuit explained that one factor in that case that supported a determination that the speech at issue, because it took the form of an employee grievance, was not made as a citizen was that it was speech for which there was no relevant civilian analogue. *See Weintraub*, 593 F.3d at 203; *cf. Jackler*, 658 F.3d at 241 (explaining that "a citizen has a First Amendment right to decide what to say and what not to say, and, accordingly, the right to reject governmental efforts to require him to make statements he believes are false"). The Court of Appeals contrasted Weintraub's speech with examples from *Garcetti* that had such analogues, such as the letter to a local newspaper which "'held no official significance and bore similarities to letters submitted by numerous citizens every day,' and 'discussi[ons of] politics with a co-worker.'" *Weintraub*, 593 F.3d at 203-04 (quoting *Garcetti*, alterations in original). Likewise, the Second Circuit suggested that complaints to an "elected representative or inspector general" were speech with a civilian analogue. *Id.* at 204.

Courts applying *Weintraub* and *Garcetti* have similarly considered whether the speech at issue had a relevant civilian analogue. In many cases, these courts have held that because an instance of speech was made through internal channels, it was speech without a relevant civilian analogue. *See, e.g., Spencer v. City of New York*, No. 06-cv-2852, 2012 U.S. Dist. LEXIS 96970, at *18 (S.D.N.Y. July 12, 2012); *Kelly*, No. 09-cv-2101, 2012 U.S. Dist. LEXIS 45725, at *43-44; *cf. Schoolcraft*, No. 10-cv-6005, 2012 U.S. Dist. LEXIS 82888, at *21-22 (finding speech was as an employee where, although plaintiff intended to go to the press, he had not yet done so and his speech was therefore confined to his immediate supervisors); *Matthews v. Lynch*, No. 07-cv-739, 2011 U.S. Dist. LEXIS 38788, at *9-10 (D. Conn. Apr. 11, 2011). In contrast, courts in those cases in which the speech at issue was made to politicians, the press, or other

external channels have often found that the speech had a civilian analogue and was made as a citizen rather than an employee. *See, e.g., Konspore v. Friends of Animals, Inc.*, No. 10-cv-613, 2012 U.S. Dist. LEXIS 38334, at *50-51 (D. Conn. Mar. 20, 2012) (complaint to Connecticut Attorney General about mismanagement and abuse of donations was made via channels available to civilians generally, unlike union grievances or internal complaints); *Pisano*, No. 08-cv-1045, 2011 U.S. Dist. LEXIS 28864, at *38-43 (holding that a complaint by a police officer that the police chief was legally ineligible for that position had a relevant civilian analogue in part because he approached local elected officials to discuss the issue); *Smith*, No. 09-cv-9256, 2011 U.S. Dist. LEXIS 125069, at *22 ("Smith's interviews with the press in 2007 and 2008, however, were clearly spoken as a citizen on a matter of public concern; the defendants in their briefing concede as much."); *Ricciuti v. Gyzenis*, 832 F. Supp. 2d 147, 157-58 (D. Conn. 2011); *see also Jackler*, 658 F.3d at 241 (reiterating that the Second Circuit had indicated in *Weintraub* that "an indicium that speech by a public employee has a civilian analogue is that the employee's speech was to an independent state agency responsible for entertaining complaints by any citizen in a democratic society regardless of his status as a public employee"). Thus, that Taylor's speech was made to the press and politicians counsels in favor of finding that her speech was not as an employee, but as a citizen and is a significant consideration in this Court's analysis.

However, that Taylor directed her speech to the press and politicians—standing alone—does not dispose of the question of whether her speech was made as an employee or as a citizen. *Garcetti* and *Weintraub* suggest that if the content of an employee's speech is directed toward the proper performance of their own, specific job duties, it was likely as an employee even if made through external channels. *Accord, e.g., Pisano*, No. 08-cv-1045, 2011 U.S. Dist. LEXIS 28864, at *41-43 (holding that certain speech, even though made to the mayor at his home—

8

which the court had held was speech with a civilian analogue—was made pursuant to his job duties); *cf. McLaughlin v. Pezzolla*, No. 06-cv-376, 2010 U.S. Dist. LEXIS 19786, at *8-9 (N.D.N.Y Mar. 4, 2010) (holding that speech made through external letters outside the chain of command regarding corruption "outside [the plaintiff's] own personal caseload and affecting patients with whom the plaintiff had no personal or job connection was made as a civilian). Those cases, for example, focused on whether the speech "owes its existence" to the employee's responsibilities, *Garcetti*, 547 U.S. at 421-22, or was "part-and-parcel of [the plaintiff's] concerns about his ability to properly execute his duties as a public school teacher," *Weintraub*, 593 F.3d at 203 (quotation marks omitted). Indeed, *Weintraub* noted that the lack of a civilian analogue to the speech at issue was not dispositive in that case. *Weintraub*, 593 F.3d at 204; *Williams v. County of Nassau*, 779 F. Supp. 2d 276, 283-84 (E.D.N.Y. 2011) ("*Weintraub* and its progeny make clear that merely reporting information outside the chain of command is not necessarily sufficient, in and of itself, to establish that a public employee was speaking as a citizen"); *Kiehle v. County of Cortland*, No. 09-cv-1259, 2011 U.S. Dist. LEXIS 73711, 13-14 (N.D.N.Y July 8, 2011) ("Although not a dispositive factor, the existence of a citizen analogue may serve as a proxy for the controlling question of what role the speaker occupied when [she] spoke." (internal citation and quotation marks omitted, alterations in original)).

Moreover, assigning dispositive weight to the medium of Taylor's speech would run counter to the instruction of cases in this area that the First Amendment does not empower public employees to "constitutionalize the employee grievance." *Garcetti*, 547 U.S. at 420 (quotation marks omitted). A finding at this stage of the proceedings that Taylor's speech was—as a matter of law—made as a citizen wholly because it was made outside her "chain-of-command" would allow public employees to convert internal grievances to citizen speech merely by directing that

9

speech to the press or politicians. *See, e.g., Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 747 (10th Cir. 2010) (noting that the Tenth Circuit has rejected *per se* rules on this point). Similarly, the weight of the government's interest in controlling public sector employees, recognized by the Supreme Court, counsels against giving dispositive weight to the fact that a communication was to the press, a politician, or independent state agency. *See Garcetti*, 547 U.S. at 418. Thus, in order to determine whether Taylor's speech was made as a citizen or as a public employee, the Court must analyze the content of Taylor's speech and cannot rely solely on the individuals or entities to which Taylor directed her speech.

Defendants argue that Taylor's speech was about a work-place issue concerning her students' grades and was, therefore, advocacy on their behalf falling within her official duties. (Def. Mot. at 6-7). However, at this stage the Court has been presented with no evidence as to the precise content of Taylor's speech and must instead rely on the allegations of the Complaint, which state that she "brought the matter of the fraudulent grades" to the attention of various local politicians and the press (Am. Compl. ¶¶ 15-16). Based on those allegations, the Court can envision a range of possible content to Taylor's speech.

For example, if Taylor's speech were purely advocacy for her students' educational needs or otherwise necessary for the orderly performance of her duties, there is a strong case for holding that it was speech as an employee, rather than a citizen. A number of cases have held that such speech by teachers is speech as an employee, rather than a citizen. *See Woodlock v. Orange Ulster B.O.C.E.S.*, No. 06-cv-3412, 281 Fed. Appx. 66, 67-68 (2d Cir. June 17, 2008) (unpublished) ("Woodlock's communications regarding M.C. and the lack of physical education and art classes at the Cornwall satellite were made pursuant to her 'official duties' as a special education counselor, in which capacity she was responsible for monitoring her students'

10

behavior, needs, and progress."); *Kelly*, No. 09-cv-2101, 2012 U.S. Dist. LEXIS 45725, at *39-43 (explaining that the speech at issue fell within the teacher's job duties, including to effectively teach lessons and ensure student safety, and that a complaint over improper tutoring was pursuant to her duties because it related to a concern regarding teacher misconduct violating a school policy); *Ehrlich v. Dep't of Educ.*, No. 11-cv-4114, 2012 U.S. Dist. LEXIS 17285, at *8-9 (S.D.N.Y. Feb. 6, 2012) (explaining that "courts have routinely held as a matter of law that a teacher's advocacy on behalf of her students falls squarely within her official duties as a teacher"); *Adams v. New York State Educ. Dep't*, No. 08-cv-5996, 2010 U.S. Dist. LEXIS 15635, at *78-93 (S.D.N.Y. Feb. 23, 2010). Likewise, even to the extent that Taylor's speech was reporting an error or misconduct, in this context it could still be characterized as speech pursuant to her employment duties. *See Barclay*, No. 07-cv-3219, 368 Fed. Appx. at 268 (plaintiff conceded at her deposition that it was her responsibility to report patient abuse and nurses sleeping on the job and the record evidence supported this determination); *Williams*, 779 F. Supp. 2d at 283; *Peres v. Oceanside Union Free Sch. Dist.*, No. 05-cv-1807, 2008 U.S. Dist. LEXIS 7403, at *36-38 (E.D.N.Y. Jan. 31, 2008) (holding that plaintiff, who was responsible for signing off on purchase of supplies for extra-curricular student activities, spoke as a public employee when she complained internally that her secretary was forging her signature on such project purchase orders). Such speech could likely be fairly characterized as "ow[ing] its existence" to Taylor's responsibilities and be "part-and-parcel" of the execution of her duties.

In contrast, if the evidence shows that Taylor's speech was not directed at the performance of her job duties, but rather at—for example—reporting fraud, corruption, or criminal behavior, this could suggest that her speech was as a citizen, rather than an employee. *See, e.g., Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 167 n. 3 (2d Cir.

11

2006) (explaining that the plaintiff teacher and athletic director was speaking about the circumstances leading to criminal activity in the public school system and the manner in which school officials were responding, and was thus speaking as a citizen); *cf. also Konspore*, No. 10-cv-613, 2012 U.S. Dist. LEXIS 38334, at *50-51; *Pisano*, No. 08-cv-1045, 2011 U.S. Dist. LEXIS 28864, at *35-43 (holding that plaintiff police officer's complaint that police chief was not legally eligible to be chief was spoken in capacity as a civilian but that speech on other topics related to his duties because it expressed his concerns over public safety, including concerns that the police chief was issuing unlawful orders and engaged in other improprieties); *McLaughlin*, No. 06-cv-376, 2010 U.S. Dist. LEXIS 19786, at *8-9 (explaining that the speech addressed "systemic corruption"). Similarly, to the extent her speech could be characterized as a broader policy-related commentary, this too would tend to favor a conclusion that it was speech as a citizen. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 565-67, 574-75 (1968) (holding that the plaintiff engaged in protected speech when he submitted a letter to a newspaper criticizing the school board's handling of a bond issue proposal, its allocation of financial resources, and efforts to prevent teachers from criticizing the bond issue).

Drawing all reasonable inferences in Taylor's favor, the Complaint allows a reasonable inference that the content of Taylor's speech was not made in furtherance of her official duties. As the Supreme Court has explained, not all speech that is concerned with the subject matter of a plaintiffs' employment is speech as an employee. *See Garcetti*, 547 U.S. at 421. Although it may be the case that the content of Taylor's speech was as an employee, and that her statements to the press and local politicians were merely an effort to short-circuit her internal chain of command, this is not a necessary conclusion or the only reasonable inference that can be drawn from the Complaint. *See Kassner*, 496 F.3d at 237 (2d Cir. 2007) (explaining that, on a motion

to dismiss, all reasonable inferences must be drawn in favor of the plaintiff).

As to the other factors that may inform the Court's analysis, the Court notes that it has no record or allegations to assess as to whether Taylors speech may have been pursuant to any rules or official policies governing her employment. However, it appears that her speech may have been of the sort that courts have held was derived from special knowledge resulting from her employment, suggesting it was made as an employee. *See, e.g., Pisano*, No. 08-cv-1045, 2011 U.S. Dist. LEXIS 28864, at *31; *Bearss*, No. 08-cv-248, 2010 U.S. Dist. LEXIS 144492, at *17-18.

Defendants urge the Court that the content of Taylor's speech trumps its form, and that as a matter of law Taylor was speaking as an employee rather than a citizen. In particular, Defendants cite as persuasive authority *Ehrlich*, No. 11-cv-4114, 2012 U.S. Dist. LEXIS 17285, at *8-9, in which the district court held that speech by a teacher to the New York City Department of Education ("DOE") and two private advocacy grounds regarding the defendants' failure to provide adequate services to disabled students was speech as an employee. However, although factually similar to the present case in some respects, *Ehrlich* did not address whether the plaintiffs' speech to private advocacy groups should be treated differently than her complaints to the DOE. *Id.* Moreover, as just discussed, the Court lacks a record on the precise content and nature of Taylor's speech. Finally, Taylor's speech was directed toward the press and politicians—groups identified by *Weintraub* as suggesting the speech was made as a civilian—rather than to private advocacy groups.

Absent a more detailed record of the content and circumstances of Taylor's speech, the Court cannot say, as a matter of law, that her speech was as an employee rather than a citizen and that Defendants are entitled to prevail as a matter of law on her First Amendment claim. To

survive a motion to dismiss, a complaint must merely set forward a short plain statement of the claim that gives the defendants fair notice of the claim and sets forward a plausible entitlement to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Decotiis*, 635 F.3d at 34-35. Drawing all reasonable inference in Taylor's favor, her Complaint is sufficient to preclude judgment as a matter of law at this time.

### B. Causation

Defendants also argue that Taylor cannot maintain her First Amendment claim because "'it is beyond a doubt that [she] can prove no set of facts in support of the claim which would entitle [her] to relief,'" and specifically contend that she cannot establish a causal connection between her speech and the adverse employment action. (Mot. at 9 (quoting *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir. 1995)); *see also Feingold v. New York*, 366 F.3d 138, 160 (2d Cir. 2004). Defendants urge the Court to consider Taylor's performance reviews prior to her speech and attempt to refocus the Court from Taylor's termination to her unfavorable performance review after she reported the allegedly fraudulent grades. (Mot. at 9-13).

Even were the Court to consider extraneous materials beyond the pleadings such as Taylor's performance reviews, Taylor has adequately alleged causation to survive Defendants' motion. Taylor's Amended Complaint alleges that she was terminated shortly after her speech, after Defendants complained about her conduct and gave another individual an unsatisfactory rating based on her speech, and occurred at the end of the school year rather than when the other teachers had been terminated for budgetary reasons. (Am. Compl. ¶¶ 18-22). Drawing reasonable inferences in Taylor's favor, she has sufficiently alleged causation; the impact of Taylor's negative performance reviews is an issue of fact not appropriate for resolution at this stage. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) ("A plaintiff can establish a

causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action"); *McAvey v. Orange-Ulster BOCES*, 805 F. Supp. 2d 30, 40 (S.D.N.Y. 2011).

## IV. THE MUNICIPAL DEFENDANTS

Defendants also move to dismiss Taylor's claims against the City of New York and the New York City Department of Education ("DOE"), arguing that Taylor has not sufficiently alleged liability on the part of these entities. First, Defendants assert that Taylor has not alleged elements sufficient to establish municipal liability and, furthermore, that the City of New York and DOE are distinct entities, such that City of New York cannot be liable for the actions of the DOE. (Mot. at 13-14); *see Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) ("[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." (quotation marks omitted; alteration in original)); *Desir v. City of New York*, No. 10-cv-3815, 453 Fed. Appx. 30, 36 (2d Cir. 2011) (unpublished) (explaining that the plaintiff failed to allege municipal liability as to the DOE); *Rosenfeld v. City of New York*, No. 06-cv-1979, 2012 U.S. Dist. LEXIS 39548, at *18-19 (E.D.N.Y. Mar. 22, 2012).

Taylor's only response to these arguments is to assert that "the City is liable because, after being informed of the violations of Plaintiff's First Amendment Rights through its office, the Special Commissioner of Investigation ('SCI'), the City failed to remedy the wrong," apparently a suggestion that the City of New York is directly liable based on the activities of the SCI. (Opp. at 12-13). As a preliminary matter, this response does not address Defendants' arguments that Plaintiff has not sufficiently alleged liability against the DOE. *See United States v. Ramos*, 677 F.3d 124, 129 n.4 (2d Cir. 2012) (argument not made in a party's briefs was

waived); *Villanueva v. City of New York*, No. 08-cv-8793, 2010 U.S. Dist. LEXIS 38703, at *2 n.2 (S.D.N.Y. Apr. 14, 2010); *Moore v. City of New York*, No. 08-cv-8879, 2010 U.S. Dist. LEXIS 19183, at *14-16 (S.D.N.Y. Mar. 1, 2010) (explaining that the City of New York and the DOE are distinct legal entities).

Moreover, as Defendants note in their reply brief, there are not sufficient allegations in the Amended Complaint to state a claim for liability based on the actions of the SCI. The sole allegation with respect to SCI is that SCI "conducted an investigation and concluded that, under the narrow definition of New York's 'whistleblower' laws, plaintiff's complaints did not fall under the New York City whistleblower law." (Am. Compl. ¶ 24). This bare allegation does not suggest what actions SCI took that Taylor believes amount to wrongdoing or even contain a clear indication that SCI took any wrongful actions at all. Even under the minimal standards of notice pleading, Plaintiff is still required to give fair notice to the Defendants of the bases of her claims and has not done so here. *See Iqbal*, 556 U.S. at 678; *Hedges v. Town of Madison*, No. 10-1566, 456 Fed. Appx. 22, 24 (2d Cir. Jan. 13, 2012) (unpublished); *Oliva v. Town of Greece*, No. 11-cv-6189, 2012 U.S. Dist. LEXIS 9394, at *6-7 (W.D.N.Y. Jan. 26, 2012); *see also Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 631 F.3d 57, 68 (2d Cir. 2011).

## V. CONCLUSION

Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Pursuant to the Court's individual rules, after Defendants filed a motion to dismiss on March 19, 2012, Plaintiff was given the option of amending her complaint in response to the motion to dismiss. Plaintiff availed herself of this opportunity and filed the Amended Complaint, leading Defendants to file motions to dismiss in early May of 2012. (D.E. 17, 19, 21, 24). Because Plaintiff was afforded an opportunity to amend her complaint to cure its defects, the Court's

dismissal of the DOE and City of New York is with prejudice.

An Initial Pretrial Conference is set for September 21, 2012, at 4:30 pm. The parties are directed to the Court's March 5, 2012 order regarding the materials that must be submitted in advance of that conference and the deadline for doing so.

Dated: August 6, 2012
New York, New York

_____
ALISON J. NATHAN
United States District Judge